UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J. RAY McDERMOTT ENGINEERING, L.L.C., SPARTEC, INC., AND J. RAY McDERMOTT, INC. | CIVIL ACTION |
| VERSUS | NO. 04-1335 |
| FUGRO-McCLELLAND MARINE GEOSCIENCES, INC. | SECTION: "C" |

## ORDER AND REASONS

Before this Court is a Motion for Summary Judgment to Dismiss the Claim Already Paid filed by the defendant, Fugro-McClelland Marine Geosciences, Inc. ("FMMG") (Rec. Doc. 204). The plaintiffs, J. Ray McDermott Engineering, L.L.C. ("JMRE"), SparTEC, Inc. ("SparTEC") and J. Ray McDermott, Inc. ("JRM" collectively "plaintiffs") oppose the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law the Court finds that FMMG's motion is **GRANTED**.

**I. BACKGROUND**

This case concerns problems which arose during the construction of an oil and gas platform, known as the Devil's Tower SPAR Platform ("Devil's Tower"), which was to be permanently installed into the seabed on the Outer Continental Shelf ("OCS"). See, Rec. Doc. 1. The facility was to be "used for the exploration, development and/or production of minerals of

the subsoil and seabed of the [OCS]." *Id.*  The platform was to be held stationary by a "wire mooring system" which "consists of cables/chains and suctions piles or caissons (anchors) embedded in the ocean floor." *Id.*  It is undisputed that the platform is not a vessel. *Id.*, citing *Fields v. Pool Offshore, Inc.,* (5th Cir. 1999)).

Numerous parties were engaged in the construction and installation process.  The owner of the tower, Dominion, hired SparTEC, one of the plaintiffs, to be the general contractor for the project.  See, Rec. Doc. 85, Exhibit A, Dominion/SparTEC Agreement.  SparTEC contracted with plaintiff JRME for "design and engineering services."  See, Rec. Doc. 85.  JRME in turn subcontracted with defendant FMMG who was "to perform the engineering analysis and foundation analysis" of the platform.  See, Rec. Doc. 1.

Pursuant to its contract with JRME, FMMG produced an engineering report discussing construction and installation of the platform.  FMMG's report was essentially the blueprint for the process of constructing the caissons and installing them into the seabed. *Id.*  FMMG played no part in actually installing the caissons; its only role was as designer and engineer.  *Id.* Plaintiff JRM's role in this process involved "transportation and installation of the caissons using JRM's heavy lift crane vessels and other special purpose vessels."  See, Rec. Doc. 85.  In other words, part of JRM's responsibility was to ship the materials out to the worksite for installation, in addition to helping with the installation itself.  During the caisson installation process, certain caissons were damaged.  JRM claims to have suffered damages from the delays and vessel down-time experienced as a result of the construction problems.  See, Rec. Doc. 1.  It is alleged by the various plaintiffs that the cause of the damage was erroneous calculations made by FMMG in its engineering report.  *Id.*

The plaintiffs have asserted various causes of action in both tort and contract related to the alleged errors in FMMG's report.  FMMG is the lone defendant in this case.  There are no allegations in this case that any other party caused the accident other than FMMG's boilerplate answer to the complaint wherein it alleges "want of due care on the part of plaintiffs in a number of respects." *Id*.

The McDermott entities and/or other named assured sustained losses of $4,573,874.56 or more with respect to the damage to the caissons and covered sue and labor expenses.  See, Rec. Doc. 173.  The assureds submitted proofs of loss and the London Market Insurers paid $3,595,991.81 under the insurance policy.  *Id*.  FMMG did not make a claim under the policy and then filed a third-party complaint against the London Market Insurers alleging that it is entitled to coverage under the relevant insurance policy on the basis that it is an additional assured.  *Id*.  The London Market Insurers filed a motion for summary judgment alleging that FMMG is not an additional assured on the policy and that, even if it were, they do not owe FMMG any indemnity because they paid the loss in full consistently with the terms of the policy.  The Court granted the London Market Insurers' motion, reasoning that the London Market Insurers had no interest in the case because they paid the plaintiff's claims for the benefit of all insured parties.

Subsequently, FMMG filed this motion seeking to dismiss the plaintiffs' claims that have already been paid by the London Market Insurers.  According to FMMG, the London Market Insurers are subrogated to the plaintiffs' claims. Thus, the plaintiffs cannot seek redress from FMMG.

**II. ANALYSIS**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

FMMG argues any of the plaintiffs claims against it that have already been paid by the London Market Insurers should be dismissed. FMMG asserts that it is undisputed that the plaintiffs have already been paid in full, but for their deductible, for the property damages claimed and that this is an action for a double recovery. FMMG states that when the plaintiffs submitted their claims to the London Market Insurers, the insurers became legally and/or conventionally subrogated to those claims, which served to extinguish the plaintiffs' claims.

The plaintiffs, on the other hand, argue that there was no subrogation. They allege that the London Market Insueres' refusal to join in this action as a subrogated insurer or otherwise pursue FMMG shows a tacit acceptance of the plaintiffs' right to pursue FMMG and a waiver of any subrogation. Furthermore, the plaintiffs argue that although they are seeking "double recovery" there is only singular liability on FMMG's part. Essentially, the plaintiffs argue that the collateral source rule allows them to pursue the tortfeasor for the full amount of damages, despite the fact that they have been paid by their insurer. The plaintiffs point out that FMMG should not receive a windfall simply because they had the foresight to purchase insurance.

Under Louisiana law, there are two forms of subrogation, legal and conventional. Legal subrogation "results from a person's performance of the obligation of another [and] that obligation [then] subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but [the obligation] is extinguished for the original obligee." LA. CIV. CODE art. 1826(A). Conventional subrogation, on the other hand arises by contract. It is the assignment of one party's rights to another. Here, FMMG claims that the London Market Insurers were subrogated to the plaintiffs' rights against FMMG.

FMMG argues that the London Market Insurers were legally subrogated to the plaintiffs'

5

claims against it when they paid the plaintiffs' claims by the operation Louisiana Civil Code article 1826(A). To support this argument, FMMG cites *Aetna Ins. Co. v. Naquin*, 488 So.2d 950 (La. 1986), which held that under La.Civ.Code art. 2161 (the predecessor to current article 1829), the property insurer was legally subrogated to the insured's claim because they were bound with the insured and had an interest in discharging the debt. See also, *Sentry Indemnity Co. v. Rester*, 430 So.2d 1159 (La. App. 1 Cir. 1983).

Here, the London Market Insurers provided property insurance to the plaintiffs. Then, they paid the plaintiffs' claims that allegedly arose from FMMG's negligence. Like Aetna Insurance Company, the London Market Insurers were bound with the insured, i.e. the plaintiffs, and had an interest in discharging FMMG's debt. Therefore, the London Market Insuerers are subrogated to the plaintiffs' claims against FMMG.

In Louisiana, when subrogation has occurred the obligation is extinguished for the obligee. *Small v. Baloise Ins. Co. of America*, 753 So.2d 234, 247, 1996-2484 (La. App. 4 Cir. 3/18/98) (citing La. C.C.P. art. 1826). Thus, the right of subrogation is an exception to the collateral source rule. *Guillory v. Terra Intern., Inc.*, 613 So. 2d 1084, 1093 (La. App. 3 Cir. 1993). However, the original obligee who is paid only in part may exercise a right for the balance of the debt. *Small*, 753 So.2d at 234. Thus, the plaintiffs may only exercise rights against FMMG for their remaining interests, i.e. their deductibles, in the partially subrogated claims.

Although legal subrogation occurred, the plaintiffs argue that the London Market Insurers waived any rights they gained. As evidence, they point to the fact that the London Market Insurers refused to join this action as subrogated insurers and that the London Market Insurers

have otherwise refused to pursue any rights against FMMG.  According to the plaintiffs, the London Market Insurers' tacit acceptance of the plaintiffs' pursuit of FMMG shows a waiver of their rights.

FMMG, on the other hand, argues that the London Market Insurers did not waive their right of subrogation.  First, FMMG argues that any supposed waiver in the Dominion/SparTEC Agreement is non-binding because the London Market Insueres were not parties to that Agreement.  Furthermore, that Agreement only required SparTEC to procure a waiver of subrogation from whatever insurer SparTEC purchased a policy– it was not a waiver itself. See, Rec. Doc. 204,  Exhibit 1.

Second, FMMG argues the CAR policy does not waive the London Market Insurers' subrogation.  As support, FMMG cites Paragraph 7 of the "General Conditions" section, which states that the assureds have the "privilege" to waive the London Market Insurers' rights of subrogation, but this "privilege" does not constitute an actual waiver. See, Rec. Doc. 204, Exhibit 2.  In that same paragraph the policy also provides a limited waiver of subrogation, but only against entities allied or affiliated with the assured, but does not extend to any subcontractors of the assured.  Because FMMG is McDermott's subcontractor, subrogation is not waived under this provision.

Additionally, FMMG claims that the subrogation provision in the CAR  policy, while providing a limited waiver of subrogation, did not waive any subrogation rights against FMMG. Paragraph 8 on subrogation, states that the London Market Insurers will have no right of subrogation against carriers, affiliates of the Assured, and any party whom the Assured has released from liability.  See, Rec. Doc. 204, Exhibit 5.  FMMG argues that it does not fit into any

of those three categories, thus the London Market Insuerers did not waive their subrogation rights against it.

Finally, FMMG argues that the affidavits of the London Market Insurers' counsel and a McDermott representative are further evidence that the London Market Insurers recognized their subrogation rights against FMMG with respect to the $3,595,991.18 paid to McDermott. First, Richard Dicharry, counsel for the London Market Insurers, stated that the London Market Insurers notified McDermott that they were "uninterested in asserting any right of subrogation they may have" for the amount paid to the entities for the damage to the caissons. See, Rec. Doc. 204, Exhibit 8. Second, Louis Burkart, vice president for McDermott, stated that the London Market Insurers notified McDermott that they were not interested in asserting any rights of subrogation they may have for the loss at issue. See, Rec. Doc. 204, Exhibit 9. Thus, FMMG asserts that the London Market Insurers did not waive their rights of subrogation – they simply chose, for business reasons, not to pursue a claim against FMMG.

Under Louisiana law, subrogation is a fact that must be proven. See, *Sutton v. Lambert*, 657 So.2d 697, 707, 942301 (La. App. 1 Cir. 6/23/1995), *Small v. Baloise Ins. Co. of America*, 753 So.2d 234 , 247, 1996-2484 (La. App. 4 Cir. 3/18/98), *Guillory*, 613 So. 2d at 1094. It is clear that the London Market Insueres were legally subrogated to the extent that they paid plaintiffs for their claims against FMMG. The plaintiffs argue that the London Market Insurers waived any rights that they may have acquired by subrogation. However, they only offer their assumptions that the London Market Insuerers' lack of action against FMMG signifies a waiver of their rights. There are any number of reasons why the London Market Insurers have chosen not to pursue their rights against FMMG. The plaintiffs assertions are not sufficient proof to

create a genuine issue of material fact and overcome a motion for summary judgment.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that FMMG's Motion for Summary Judgment to Dismiss the Claim Already Paid is **GRANTED**.

New Orleans, Louisiana this 27th day of December, 2006.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE