UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J. RAY McDERMOTT ENGINEERING, L.L.C., SPARTEC, INC., AND J. RAY McDERMOTT, INC. | CIVIL ACTION |
| VERSUS | NO. 04-1335 |
| FUGRO-McCLELLAND MARINE GEOSCIENCES, INC. | SECTION: "C" |

## ORDER AND REASONS

Before this Court are cross motions for summary judgment filed by the plaintiffs, J. Ray McDermott Engineering, L.L.C. ("JMRE"), SparTEC, Inc. ("SparTEC") and J. Ray McDermott, Inc. ("JRM" collectively "plaintiffs") (Rec. Doc. 200) and the defendant, Fugro-McClelland Marine Geosciences, Inc. ("FMMG") (Rec. Doc. 210). These motions are before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law the Court finds that the plaintiffs' motion is **GRANTED** and FMMG's motion is hereby **DENIED**.

## I. BACKGROUND

This case concerns problems which arose during the construction of an oil and gas platform, known as the Devil's Tower SPAR Platform ("Devil's Tower"), which was to be permanently installed into the seabed on the Outer Continental Shelf ("OCS"). See, Rec. Doc. 1.

The facility was to be "used for the exploration, development and/or production of minerals of the subsoil and seabed of the [OCS]." *Id.* The platform was to be held stationary by a "wire mooring system" which "consists of cables/chains and suctions piles or caissons (anchors) embedded in the ocean floor." *Id.* It is undisputed that the platform is not a vessel. *Id.*, citing *Fields v. Pool Offshore, Inc.,* (5th Cir. 1999)).

Numerous parties were engaged in the construction and installation process. The owner of the tower, Dominion, hired SparTEC, one of the plaintiffs, to be the general contractor for the project. See, Rec. Doc. 85, Exhibit A, Dominion/SparTEC Agreement. SparTEC contracted with plaintiff JRME for "design and engineering services." See, Rec. Doc. 85. JRME in turn subcontracted with defendant FMMG who was "to perform the engineering analysis and foundation analysis" of the platform. See, Rec. Doc. 1.

Pursuant to its contract with JRME, FMMG produced an engineering report discussing construction and installation of the platform. FMMG's report was essentially the blueprint for the process of constructing the caissons and installing them into the seabed. *Id.* FMMG played no part in actually installing the caissons; its only role was as designer and engineer. *Id.* Plaintiff JRM's role in this process involved "transportation and installation of the caissons using JRM's heavy lift crane vessels and other special purpose vessels." See, Rec. Doc. 85. In other words, part of JRM's responsibility was to ship the materials out to the worksite for installation, in addition to helping with the installation itself. During the caisson installation process, certain caissons were damaged. JRM claims to have suffered damages from the delays and vessel down-time experienced as a result of the construction problems. See, Rec. Doc. 1. It is alleged by the various plaintiffs that the cause of the damage was erroneous calculations made by

FMMG in its engineering report. *Id.*

The plaintiffs have asserted various causes of action in both tort and contract related to the alleged errors in FMMG's report. FMMG is the lone defendant in this case. There are no allegations in this case that any other party caused the accident other than FMMG's boilerplate answer to the complaint wherein it alleges "want of due care on the part of plaintiffs in a number of respects." *Id*.

The McDermott entities and/or other named assured sustained losses of $4,573,874.56 or more with respect to the damage to the caissons and covered sue and labor expenses. See, Rec. Doc. 173. The assureds submitted proofs of loss and the London Market Insurers paid $3,595,991.81 under the insurance policy. *Id*. FMMG did not make a claim under the policy and then filed a third-party complaint against the London Market Insurers alleging that it is entitled to coverage under the relevant insurance policy on the basis that it is an additional assured. *Id*. The London Market Insurers filed a motion for summary judgment alleging that FMMG is not an additional assured on the policy and that, even if it were, they do not owe FMMG any indemnity because they paid the loss in full consistently with the terms of the policy. The Court granted the London Market Insurers' motion, reasoning that the London Market Insurers had no interest in the case because they paid the plaintiff's claims for the benefit of all insured parties.

Subsequently, FMMG and the plaintiffs filed cross-motions for summary judgment on the additional assured issue. FMMG claims that it is an additional assured, whereas the plaintiffs, argue that FMMG is not. FMMG asserts that the additional assured issue is key, because if FMMG is an additional assured, the anti-subrogation rule would prevent the suit

against it for what has been paid to the plaintiffs by the London Market Insurers.

**II. ANALYSIS**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

In the case at bar, the plaintiffs claim that FMMG is not an additional assured to their insurance policy, which covered the Devil's Tower project. The Construction All Risks insurance policy ("CAR policy") in question provides coverage for "Additional Assureds." Under the policy,

> [i]t is understood and agreed that Owners, Operators, Lessees, and/or Subcontractors [are] included as Additional Assureds under the Policy (but only for the period of time during which the property and work is the Named Assured's responsibility) to the extent of their interest in the property and work.

See, Rec. Doc. 200.  According to the plaintiffs, FMMG does not fit this definition and is not covered by the CAR policy as an additional assured.  Thus, they contend that, under the collateral source rule, they are entitled to recover all damages caused by FMMG's negligence from FMMG.

First, the plaintiffs argue that the CAR policy was intended to cover property damage, not general liability for negligence.  The plaintiffs claim that the CAR policy insured the insurable interests of the parties in the property used in the construction of the Devil's Tower and did not provide any liability insurance to any party.  Thus, because FMMG did not provide any materials to the Devil's Tower project, but only designs, it had no insurable interest in the property.

The plaintiffs bolster this argument by referring to the terms of the Dominion/SparTEC Agreement.  The Dominion/SparTEC Agreement required SparTEC to maintain a CAR policy covering physical loss or damage to the Devil's Tower, the work, and all materials, equipment and other items incorporated or to be incorporated into the Devil's Tower. It also required all subcontractors to have commercial general liability insurance and excess liability insurance.  According to the plaintiffs, this is more evidence that the CAR policy covered ***property damage***

*NOT general liability* and leads to the conclusion that FMMG was not an additional assured.

The plaintiffs also point to the Dominion/SparTEC Agreement to support their argument that FMMG is not a subcontractor. The Dominion/SparTEC Agreement contains a list of designated subcontractors. FMMG is not included in this list. Thus, the plaintiffs conclude that FMMG is not a subcontractor covered by the CAR policy's "Additional Assureds" clause.

On the other hand, FMMG claims that it satisfies the requirements of the additional assureds clause and is covered by the CAR policy for the loss in question. First, FMMG argues that the Dominion/SparTEC Agreement required the CAR policy coverage to extend to it. FMMG defines itself as a member of the "contract group" to which the CAR policy was required to apply. It argues that it is immaterial that it was not named in the list of subcontractors in the Dominion/SparTEC Agreement because that list only contains the names of McDerrmot entities. FMMG reasons that the nature of its work makes it a subcontractor and thus eligible to be an additional assured.

Next, FMMG asserts that it has an insurable interest in the Devil's Tower project based on other language in the CAR policy. Specifically, the CAR policy uses the broad language, "all risks of physical loss or damage from any cause." The plaintiffs allege that the direct cause of the caisson failure was FMMG's engineering report and the Cover note of the Policy defines the scope of coverage to include design and engineering work. Additionally, the term "WORK" is defined as "all services," and the Dominion/SparTEC Agreement required all members of the "CONTRACTOR GROUP" be covered. Furthermore, FMMG argues that this lawsuit shows that it had an insurable interest because it was exposed to potential financial loss or liability. Thus, FMMG concludes that it must be an additional assured.

To support this assertion, FMMG relies on *Texaco Exploration and Production, Inc. v. AmClyde Engineering Products Co., Inc.* 448 F.3d 760, 778-79 (5th Cir. 2006). The *Texaco Exploration* court found that AmClyde was an additional assured on the insurance policy in question therein because it was a subcontractor on and provided design services and technical advice to the project. *Id.* at 779. Similarly, FMMG asserts that it was a subcontract on and provided design services to the Devil's Tower. By analogy FMMG reasons that it is an additional assured pursuant to the insurance policy in question.[1]

However, the relevant provision of the insurance policy in question in the *Texaco Exploration* case is different from the "Additional Assureds" clause at issue here. The *Texaco Exploration* insurance policy provided that:

> other contractors and/or sub-contractors and/or suppliers and any other company, firm, person or party with whom the Assured(s) in (1), (2) or (3) of this Clause have, or in the past had, entered into written agreement(s) in connection with the subject matters of Insurance, and/or any works, activities, preparations, etc. connected therewith.

*Id.* at 777. The court found that AmClyde fit the legal definition of "subcontractor" and that a written agreement was not required between the principal assured and a subcontractor for the subcontractor to be an additional assured. *Id.* at 777-79.

The CAR policy at issue does not have the same "written agreements" language which would make an entity or person an additional assured. Here, additional assureds are owners,

---

[1] FMMG also argues that the London Market Insurers' failure to seek indemnity from it implies that they believe that it is in fact an additional assured under the policy. FMMG basis this argument on the proposition that an insurer cannot seek indemnity from their assured. However, the Court does not believe that this argument is relevant because there could be any number of reasons that the London Market Insurers have not sought indemnity from FMMG. Thus, there is no necessary implication that FMMG is an additional assured.

operators, lessees, and/or subcontractors that have an interest in the property or work.  Thus, to be an additional assured FMMG must prove that it is a subcontractor with an interest in the property or work.[2]

Under Louisiana law, a subcontractor is one who takes a portion of a contract from the principal contractor or another subcontractor. *Id.* at 778 (citing *Avondale Indus., Inc. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994)).  Dominion contracted with SparTEC to build the Devil's Tower.  SparTEC subcontracted out some of the work that went into building the towner.  For example, SparTEC hired JMRE who in turn hired FMMG to do some engineering and design work.  Thus, FMMG fits the legal definition of subcontractor.

Since FMMG is a subcontractor, to be an additional assured, it must have an interest in the property or work.  FMMG argues that it had an interest in the work because it was exposed to financial loss or liability.  However, the CAR policy is a "construction all risks" policy that applies to property damage.  See, Rec. Doc. 200, Ex. 2.  It insures the property involved in the construction of the Devil's Tower against all risks.  It does not provide coverage to the assureds for their own negligence.

As stated above, FMMG provided engineering and design services to the Devil's Tower project.  It did not have a hand in the actual construction of the tower and it did not have any tangible property at the building site when the accident occurred.  Therefore, it did not have the required interest in the project.  Furthermore, even if FMMG did have the required interest, the CAR policy would only insure FMMG for the property damage that it sustained, not its own

---

[2] There is no question that FMMG is not an owner, operator or lessee with regard to the Devil's Tower.

8

negligence. Therefore, the FMMG is not an additional assured under the CAR policy.

Furthermore, FMMG's post accident actions are suspect. The plaintiffs point out that FMMG usually enters into a master services agreement with clients that contains standard indemnity and insurance provisions. See, Rec. Doc. 200. There was no such agreement here. See, Rec. Doc. 200. Subsequent to the loss, FMMG attempted to obtain such an agreement from JMRE, which would have retroactively designated FMMG as an additional assured under the CAR policy; however, JMRE refused this request. See, Rec. Doc. 200. The lack of agreement and FMMG's attempts to make one retroactively, shows that FMMG was not, and knew that it was not, an additional assured on the CAR policy. FMMG would have had no reason to try to enter that agreement after its work as already completed and after the damage had occurred, if it really were an additional assured.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the plaintiffs' Motion for Summary Judgment on the Additional Assured Issue is hereby GRANTED.

IT IS FURTHER ORDERED that FMMG's Motion for Summary Judgment on the Additional Assured Issue is hereby DENIED.

New Orleans, Louisiana this 27th day of December, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE