UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J. RAY McDERMOTT ENGINEERING, L.L.C., SPARTEC, INC., AND J. RAY McDERMOTT, INC. | CIVIL ACTION |
| VERSUS | NO. 04-1335 |
| FUGRO-McCLELLAND MARINE GEOSCIENCES, INC. | SECTION: "C" |

## ORDER AND REASONS[1]

Before this Court is a Motion for Partial Summary Judgment to Dismiss the Claims of J. Ray McDermott, Inc. ("JRM") filed by the defendant, Fugro-McClelland Marine Geosciences, Inc. ("FMMG") (Rec. Doc. 202). The plaintiffs, J. Ray McDermott Engineering, L.L.C. ("JMRE"), SparTEC, Inc. ("SparTEC") and J. Ray McDermott, Inc. ("JRM" collectively "plaintiffs") oppose the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that FMMG's motion is **DENIED**.

---

[1] Elizabeth A. Chickering, a third year student at Tulane Law School, assisted in the research and preparation of this decision.

1

I.      **BACKGROUND**

This case concerns problems which arose during the construction of an oil and gas platform, known as the Devil's Tower SPAR Platform ("Devil's Tower"), which was to be permanently installed into the seabed on the Outer Continental Shelf ("OCS"). See, Rec. Doc. 1. The facility was to be "used for the exploration, development and/or production of minerals of the subsoil and seabed of the [OCS]." *Id.*  The platform was to be held stationary by a "wire mooring system" which "consists of cables/chains and suctions piles or caissons (anchors) embedded in the ocean floor." *Id.*  It is undisputed that the platform is not a vessel. *Id.*, citing *Fields v. Pool Offshore, Inc.,* (5th Cir. 1999)).

Numerous parties were engaged in the construction and installation process.  The owner of the tower, Dominion, hired SparTEC, one of the plaintiffs, to be the general contractor for the project.  See, Rec. Doc. 85, Exhibit A, Dominion/SparTEC Agreement.  SparTEC contracted with plaintiff JRME for "design and engineering services." See, Rec. Doc. 85.  JRME in turn subcontracted with defendant FMMG who was "to perform the engineering analysis and foundation analysis" of the platform.  See, Rec. Doc. 1.

Pursuant to its contract with JRME, FMMG produced an engineering report discussing construction and installation of the platform.  FMMG's report was essentially the blueprint for the process of constructing the caissons and installing them into the seabed. *Id.*  FMMG played no part in actually installing the caissons; its only role was as designer and engineer. *Id.* Plaintiff JRM's role in this process involved "transportation and installation of the caissons using JRM's heavy lift crane vessels and other special purpose vessels."  See, Rec. Doc. 85.  In other

words, part of JRM's responsibility was to ship the materials out to the worksite for installation, in addition to helping with the installation itself.  During the caisson installation process, certain caissons were damaged.  JRM claims to have suffered damages from the delays and vessel down-time experienced as a result of the construction problems.  See, Rec. Doc. 1.  It is alleged by the various plaintiffs that the cause of the damage was erroneous calculations made by FMMG in its engineering report.  *Id.*

The plaintiffs have asserted various causes of action in both tort and contract related to the alleged errors in FMMG's report.  FMMG is the lone defendant in this case.  There are no allegations in this case that any other party caused the accident other than FMMG's boilerplate answer to the complaint wherein it alleges "want of due care on the part of plaintiffs in a number of respects."  *Id*.

The McDermott entities and/or other named assured sustained losses of $4,573,874.56 or more with respect to the damage to the caissons and covered sue and labor expenses.  See, Rec. Doc. 173.  The assureds submitted proofs of loss and the London Market Insurers paid $3,595,991.81 under the insurance policy.  *Id*.  FMMG did not make a claim under the policy and then filed a third-party complaint against the London Market Insurers alleging that it is entitled to coverage under the relevant insurance policy on the basis that it is an additional assured.  *Id*.  The London Market Insurers filed a motion for summary judgment alleging that FMMG is not an additional assured on the policy and that, even if it were, they do not owe FMMG any indemnity because they paid the loss in full consistently with the terms of the policy. The Court granted the London Market Insurers' motion, reasoning that the London Market

Insurers had no interest in the case because they paid the plaintiff's claims for the benefit of all insured parties.

FMMG and the plaintiffs also filed cross-motions for summary judgment on the additional assured issue. FMMG argued that the additional assured issue was key because if FMMG was an additional assured, the anti-subrogation rule would prevent the suit against it for what had already been paid to the plaintiffs by the London Market Insurers. The Court held that because FMMG only provided engineering and design services to the Devil's Tower project and did not have a hand in the actual construction of the tower, nor any tangible property at the building site, FMMG did not have the required interest in the project to be considered an additional assured under the CAR policy. Furthermore, even if FMMG had had the required interest, the CAR policy would only insure FMMG for property damage it had sustained, not its own negligence.

Subsequently, FMMG filed an additional motion for summary judgment seeking to dismiss the plaintiffs' claims that had already been paid by the London Market Insurers under a subrogation theory. According to FMMG, the London Market Insurers were subrogated to the plaintiffs' claims, thus the plaintiffs cannot seek redress from FMMG. The Court granted FMMG's motion, finding that the London Market Insurers were legally subrogated to the extent that they had paid plaintiffs for their claims against FMMG, and plaintiffs' assertions that the London Market Insurers had waived their rights to subrogation were insufficient to create a genuine issue of material fact to overcome FMMG's motion for summary judgment. Plaintiffs have filed a motion to reconsider this decision, which is currently pending before the Court.

FMMG filed the present motion for partial summary judgment to dismiss the claims of one plaintiff, JRM, arguing that the damages sought are too remote to the alleged cause to permit recovery.

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory

allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### III.   ANALYSIS

FMMG argues that JRM has no cause of action against FMMG because the damages sought are too remote to the alleged cause. JRM has made claims for economic damages and lost profits arising from the delay in the cassion installation, allegedly caused by FMMG's negligent design. JRM claims that as a result of the physical damage to Dominion's cassions and the resulting necessary repairs and additional time required to complete the installation, JRM faced additional costs and lost revenues on two different offshore projects.

FMMG asserts that under *Forcum-James Co. v. Duke Transportation Co.*, 231 La. 953 (La. 1957), JRM's damages are too remote. In *Forcum-James* the Louisiana Supreme Court held that "where a third person suffers damage by reason of a contractual obligation to the injured party, such damages is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation." *Id.* at 961. FMMG argues that Dominion owed the caissons that suffered physical damage, while JRM was only contractually obligated to repair and install the caissons. Thus, under *Forcum-James*, JRM's remote and indirect claims do not provide a cause of action against FMMG.

In response, JRM argues that Louisiana's adoption of the duty-risk doctrine of tort analysis effectively overrules the *Forcum-James* analysis and abandons the *per se* exclusion of

6

economic damages by third parties.  JRM argues that, as an engineering firm preparing design calculations for the caisson installation, FMMG owed a professional duty to perform their services with the same degree of skill and care exercised by other engineers in the field.  It was foreseeable that providing incorrect calculations for the design of the cassions would result in installation problems and cause delays, thus injuring JRM, the party contracted to perform the installations.  Furthermore, JRM argues that Louisiana law allows a party not in privity to sue an engineer in tort for failure to meet the standard of care and economic damages are recoverable.

Louisiana applies a duty-risk analysis to assess a party's tort liability.  Under the duty-risk analysis, the plaintiff must prove that: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) the plaintiff was damaged (the damages element).  *Westchester Fire Ins. Co. b. Haspel-Kansas Investment Partnership*, 342 F.3d 416, 419 (5th Cir. 2003) (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So.2d 270, 275-76 (La. 2002)).  The existence of a duty is a question of law, as is the question of whether a specific risk is included within the scope of the duty owed.  *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992).  The questions facing the Court in the present motion are (1) whether FMMG owed a duty, and (2) whether that duty extends to cover the loss suffered by JRM.

FMMG's argument is based on the belief that the only duty FMMG owed was the simple

7

duty to not negligently injure property. And FMMG is correct in stating that such a duty does not extend to cover economic losses incurred by third parties. *See, e.g. PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1061-62 (La. 1984). However, that is not the duty involved in the present case. This case involves the duty of care owed by an engineer to perform services in accordance with the skill usually exercised by others in the engineering profession in the same general area. *Pittman Construction Co. v. City of New Orleans*, 178 So.2d 312, 321 (La. App. 4 Cir. 1965). Louisiana specifically recognizes that an engineer owes a duty of care to persons with whom the engineer does not have privity, such as a subcontractor, and that a cause of action exists in tort to recover damages for a breach of that duty. *S.K. Whitty & Co., Inc. v Laurence L. Lambert & Associates*, 576 So.2d 599, 601 (La. App. 4 Cir. 1991); *see also Guertler, Herbert & Co., Inc. v. Weyland Machine Shop, Inc.*, 405 So.2d 660, 662 (La. App. 4 Cir. 1981). Privity is not essential – there is an independent duty owed by an engineer or architect to a subcontractor. *Farrell Construction Co. v. Jefferson Parish*, 693 F.Supp. 490, 492 (E.D.La. 1988).

FMMG correctly asserts that *Forcum-James* had not been explicitly overruled; however, the difficulty with relying on *Forcum-James* and subsequent cases cited by FMMG is that none of those cases involved an independent professional duty. *See Community Coffee Co., Inc. v. Tri-Parish Construction & Materials*, 490 So.2d 1109 (La. App. 1 Cir. 1986); *Professional Answering Service, Inc. v. Central Louisiana Electric Co., Inc.*, 521 So.2d 549 (La. App. 1 Cir. 1988). Those cases only involved the simple duty that all persons owe to not negligently damage another's property. In contrast, the present case involves the duty of an engineer, a duty which encompasses larger scope of parties.

A good explanation of the differences between the *Forcum-James* situation and the case at hand can be found in the article "Recovery in Louisiana Tort Law for Intangible Economic Loss: Negligence Actions and the Tort of Intentional Interference with Contractual Relations," 46 La. L. Rev. 737 (1986) by David W. Robertson.  The author divides the relevant case law into four different categories.  Relevant here are the categories in which (1) the defendant's negligent conduct causes physical injury to the person or property of another; plaintiff loses an economic benefit he expected to derive from the other's person or property; and (2) the defendant's negligence in the performance of an undertaking with another causes economic loss to plaintiff . *Id.* at 750.  FMMG argues the present situation fits under the former category, while JRM argues for the latter.

*PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984), where defendant negligently cut a Texaco pipeline, which interrupted plaintiff's fuel supply, falls into the first category.  In arriving at its decision, the Court analyzed policy considerations, such as moral, social and economic values involved, and held that the plaintiff did not fall within the scope of the duty the defendant dredging contractor owed to not damage pipelines negligently.  *Id.* at 1059-60.  The second category of cases, urged by JRM, involves situations where the defendant's negligent performance of an undertaking with another caused foreseeable economic harm to the plaintiff.  The leading case in this category is *Calandro Development, Inc. v. R.M. Butler Contractors*, 249 So.2d 254 (La. App. 1 Cir. 1971).  The issue there was whether a surety on a defaulting contractor's performance bond had a cause of action in tort against the engineer who designed the construction of a subdivision.  *Id.* at 255.  Plaintiff alleged that the negligence

9

of the defendant-engineer in designing the project caused the contractor to default, which forced the plaintiff to pay off the bond. *Id.* at 256. The court held that the plaintiff did have a cause of action in tort against the defendant-engineer because (1) the engineer was deemed to know that his services were for the protection of the contractor and the contractor's surety, as well as the owner of the project; (2) liability would not be expansive or indeterminate - it ran to a known party; and (3) the relationship between the engineer and the surety, while not contractual, was close. *Id.* at 265.

The present situation more closely fits into the "negligent undertaking" model than it does into the "physical damage to property" model. As the author points out, the negligent undertaking cases do not consider *Forcum-James* or *PPG Industries* to be relevant. *Recovery in Louisiana Tort Law*, 46 La. L. Rev. at 757. This has to do with the specific duties involved in each case. *PPG Industries* dealt with the "rule of law which prohibits negligent damage to property." *PPG*, 477 So.2d at 1061-62. However, that is not the rule of law the Court is faced with in the present case – the present case involves the rule of law that imposes a duty of care on a professional to meet the standards of similar professionals in the area. *See Pittman Construction Co. v. City of New Orleans*, 178 So.2d 312, 321 (La. App. 4 Cir. 1965). JRM argues that FMMG had an engineering duty to ensure that their designs were not faulty, and that duty extends to third parties who suffer economic losses because of the engineer's negligence. *S.K. Whitty*, 756 So.2d at 601. JRM's cause of action is not based on the duty FMMG owed to not negligently damage Dominion's property. While FMMG did owe a duty to not damage Dominion's property, that is not the duty at issue here – the duty at issue is FMMG's duty as a

professional engineer to perform services in accordance with local standards.  While the former duty does not extend to cover purely economic losses to third parties like JRM, the latter duty does.

FMMG was hired to produce an engineering report on the design and installation of the caissons for Devil's Tower.  As a professional, FMMG owed a duty to meet the required standard of care in preparing that report.  Under Louisiana law, FMMG owed this duty not only to the owners of the damaged property, but also to any third parties who suffered damages as a result of the alleged negligence.  JRM was hired to install the caissons, and was the only party involved in the caisson installation.  The installation manual contained documents produced by FMMG and relied on in the installation process.  In preparing these reports, FMMG should have known that the party performing the installation would rely on them, and because JRM was the only party involved in the installation process, FMMG's liability is not expansive or indeterminate.  Thus, FMMG owed a duty, and the specific risk of JRM's economic damages is included within the scope of the duty owed.

**IV.   CONCLUSION**

For the reasons stated above,

IT IS ORDERED that the defendant's Motion for Partial Summary Judgment on the Claims of J. Ray McDermott is hereby **DENIED**.

New Orleans, Louisiana this 12th day of February, 2007.

                                                                                   _____
                                                                                   HELEN G. BERRIGAN
                                                                                   UNITED STATES DISTRICT JUDGE