UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J. RAY McDERMOTT ENGINEERING, L.L.C., SPARTEC, INC., AND J. RAY McDERMOTT, INC. | CIVIL ACTION |
| VERSUS | NO. 04-1335 |
| FUGRO-McCLELLAND MARINE GEOSCIENCES, INC. | SECTION: "C" |

ORDER AND REASONS[1]

Before this Court is a Motion for New Trial and/or Reconsideration filed by the plaintiffs, J. Ray McDermott Engineer, L.L.C. ("JRME"), SparTEC, Inc. ("SparTEC"), and J. Ray McDermott, Inc. ("JRM" collectively "Plaintiffs") (Rec. Doc. 242). The defendant, Fugro-McClelland Marine Geosciences, Inc. ("FMMG") opposes the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the law, the Court finds that the Plaintiffs' motion is **GRANTED.**

---

[1] Elizabeth A. Chickering, a third-year law student at Tulane Law School, assisted with the research and preparation of this decision.

I.  **BACKGROUND**

This case concerns problems which arose during the construction of an oil and gas platform, known as the Devil's Tower SPAR Platform ("Devil's Tower"), which was to be permanently installed into the seabed on the Outer Continental Shelf ("OCS"). See, Rec. Doc. 1. The facility was to be "used for the exploration, development and/or production of minerals of the subsoil and seabed of the [OCS]." *Id.* The platform was to be held stationary by a "wire mooring system" which "consists of cables/chains and suctions piles or caissons (anchors) embedded in the ocean floor." *Id.* It is undisputed that the platform is not a vessel. *Id.*, citing *Fields v. Pool Offshore, Inc.,* (5th Cir. 1999)).

Numerous parties were engaged in the construction and installation process. The owner of the tower, Dominion, hired SparTEC, one of the plaintiffs, to be the general contractor for the project. See, Rec. Doc. 85, Exhibit A, Dominion/SparTEC Agreement. SparTEC contracted with plaintiff JRME for "design and engineering services." See, Rec. Doc. 85. JRME in turn subcontracted with defendant FMMG who was "to perform the engineering analysis and foundation analysis" of the platform. See, Rec. Doc. 1.

Pursuant to its contract with JRME, FMMG produced an engineering report discussing construction and installation of the platform. FMMG's report was essentially the blueprint for the process of constructing the caissons and installing them into the seabed. *Id.* FMMG played no part in actually installing the caissons; its only role was as designer and engineer. *Id.* Plaintiff JRM's role in this process involved "transportation and installation of the caissons using JRM's heavy lift crane vessels and other special purpose vessels." See, Rec. Doc. 85. In other words, part of JRM's responsibility was to ship the materials out to the worksite for installation,

in addition to helping with the installation itself. During the caisson installation process, certain caissons were damaged. JRM claims to have suffered damages from the delays and vessel down-time experienced as a result of the construction problems. See, Rec. Doc. 1. It is alleged by the various plaintiffs that the cause of the damage was erroneous calculations made by FMMG in its engineering report. *Id.*

The Plaintiffs have asserted various causes of action in both tort and contract related to the alleged errors in FMMG's report. FMMG is the lone defendant in this case. There are no allegations in this case that any other party caused the accident other than FMMG's boilerplate answer to the complaint wherein it alleges "want of due care on the part of plaintiffs in a number of respects." *Id*.

The McDermott entities and/or other named assured sustained losses of $4,573,874.56 or more with respect to the damage to the caissons and covered sue and labor expenses. See, Rec. Doc. 173. The assureds submitted proofs of loss and the London Market Insurers paid $3,595,991.81 under the insurance policy. *Id*. FMMG did not make a claim under the policy and then filed a third-party complaint against the London Market Insurers alleging that it is entitled to coverage under the relevant insurance policy on the basis that it is an additional assured. *Id*. The London Market Insurers filed a motion for summary judgment alleging that FMMG is not an additional assured on the policy and that, even if it were, they do not owe FMMG any indemnity because they paid the loss in full consistently with the terms of the policy. The Court granted the London Market Insurers' motion, reasoning that the London Market Insurers had no interest in the case because they paid the plaintiff's claims for the benefit of all insured parties.

Subsequently, FMMG filed a motion seeking to dismiss the Plaintiffs' claims that had already been paid by the London Market Insurers. According to FMMG, the London Market Insurers are subrogated to the Plaintiffs' claims. Thus, the Plaintiffs cannot seek redress from FMMG. The Court granted FMMG's motion, finding that the London Market Insurers were legally subrogated to Plaintiffs' rights when they paid Plaintiffs' claims, the London Market Insurers had not waived their subrogation rights, and that because subrogation is an exception to the collateral source rule, Plaintiffs could not recover from FMMG any of the amounts already paid by the London Market Insurers. Plaintiffs filed the present motion contesting that ruling.

## II.   ANALYSIS

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" in those exact terms. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1991). A motion for reconsideration is considered a Rule 59(e) motion if it is served within ten (10) days of the Court's ruling and a Rule 60(b) motion if it is served more than ten (10) days after the Court's ruling. *See id.* The order granting FMMG's Motion for Summary Judgment to Dismiss Claims Already Paid was signed December 27, 2006 (Rec. Doc. 237) and the Plaintiffs filed this motion for reconsideration on January 11, 2007. The Plaintiffs' motion was filed within ten days of the Court's judgment, therefore Rule 59(e) governs Plaintiffs' motion.

In *Washington v. CSC Credit Servs., Inc.*, 180 F.R.D. 309 (E.D.La. 1998), *rev'd and vacated on other grounds*, 199 F.3d 263 (5th Cir. 2000), this Court ruled that alteration or amendment of a previous ruling under Federal Rule of Civil Procedure 59(e) is proper only upon movant's showing of: (1) an intervening change of controlling law; (2) the availability of new

evidence; and/or (3) the need to correct a clear and manifest error of fact or law. *Id.* at 311.

The Plaintiffs have not alleged that there was an intervening change in controlling law or that any new evidence has been discovered. They argue that the Court made an error of law by granting FMMG's motion for summary judgment on the claims already paid. Plaintiffs argue that the Court erred by finding that legal subrogation occurred. Alternatively, they also claim that FMMG did not meet its burden of proving that the London Market Insurers waived any subrogation that they may have had. FMMG on the other hand, argues that the London Market Insurers were legally subrogated to the Plaintiffs' rights to pursue FMMG and that the Plaintiffs did not present enough evidence to raise a genuine issue of material fact as to whether the London Market Insurers waived any rights of subrogation that may have existed.

The Court, in part, granted FMMG's motion for summary judgment on claims already paid because it did not find that there was sufficient proof to raise a genuine issue of material fact as to whether the London Market Insurers waived subrogation. The only evidence of a waiver presented by the Plaintiffs was an affidavit of one of their representatives, Louis Burkhart. There were no statements, depositions or affidavits from the London Market Insures in which they said that they waived subrogation. In the only statements provided by the London Market Insurers directly, i.e. not through a representative of the Plaintiffs, they said that they were "uninterested in asserting any right of subrogation that they may have." See, Rec. Doc. 204, Ex. 8. Thus, at the time that it decided the motion, the Court did not believe that Louis Burkhart's self-interested, self-serving affidavit was sufficient to raise a genuine issue of material fact.

However, upon reconsideration, the Court finds that it was incorrect in determining that

there was no genuine issue of material fact. Although the Court stands by its assertion that the London Market Insurers could have chosen not to pursue FMMG for any number of reasons, the Court acknowledges that it was incorrect to decide that a waiver of subrogation was not one of those reasons. In their motion for reconsideration, the Plaintiffs point out that they were unable to depose London Market Insurers representatives in time to oppose the motion for summary judgment on claims already paid. The Court finds that there is a disputed issue of material fact until the London Market Insurers directly address whether or not they have waived or assigned any subrogation.

### III.   Conclusion

For the reasons stated above,

IT IS ORDERED that Plaintiffs' Motion for New Trial and/or Reconsideration is **GRANTED**.

New Orleans, Louisiana this 9th day of March, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE